605 A.2d 103

**Robert George WILLIAMS**

v.

**STATE of Maryland.**

**No. 55, Sept. Term, 1991.**

Court of Appeals of Maryland.

April 27, 1992.

Murphy, C.J., and Chasanow, J., concurred in result only.

Michael R. Braudes, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for petitioner.

David P. Kennedy, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, ROBERT M. BELL, JJ., and CHARLES E. ORTH, Jr., Judge of the Court of Appeals of MD (retired, specially assigned).

ROBERT M. BELL, Judge.

A single issue is presented in this case: whether, at his joint trial with Alton D. ("Pete") Grimes, Jr. in the Circuit Court for Anne Arundel County, at which both were convicted of kidnapping and related offenses, Robert George Williams, the petitioner, received adequate assistance of counsel. A post conviction court held that he did not and ordered a new trial. The State's application for leave to appeal was granted by the Court of Special Appeals, which then remanded the case to the post conviction court with instructions to vacate the order granting a new trial. At

the petitioner's request, we granted the petition for writ of certiorari to review the matter. We shall reverse the judgment of the Court of Special Appeals.

## I.

The petitioner and Grimes were tried by a jury, which, as indicated, convicted both of kidnapping and several other offenses.[1] Grimes was sentenced to 20 years imprisonment, with, however, the possibility of parole. The petitioner, on the other hand, was sentenced, pursuant to Maryland Code (1957, 1992 Repl.Vol.), Art. 27, § 643B,[2] to a term of 25 years imprisonment, without the possibility of parole.[3] On

---

**1.** Grimes was the petitioner's employer and, according to their counsel, the dominant personality.

**2.** Section 643B(c) provides:

> (c) *Third conviction of crime of violence.*—Any person who (1) has been convicted on two separate occasions of a crime of violence where the convictions do not arise from a single incident, and (2) has served at least one term of confinement in a correctional institution as a result of a conviction of a crime of violence, shall be sentenced, on being convicted a third time of a crime of violence, to imprisonment for the term allowed by law, but, in any event, not less than 25 years. Neither the sentence nor any part of it may be suspended, and the person shall not be eligible for parole except in accordance with the provisions of Article 31B, section 11. A separate occasion shall be considered one in which the second or succeeding offense is committed after there has been a charging document filed for the proceeding occasion.

Because subsection (d) requires the State to comply with the Maryland Rules concerning "the indictment and trial of a subsequent offender," the State was required to advise the petitioner, pursuant to Maryland Rule 4–245(c), that "the law prescribes a mandatory sentence because of a specified previous conviction ... at least 15 days before sentencing...." No issue is raised concerning the adequacy of notice.

**3.** In addition to this sentence, which was imposed in respect to the kidnapping count, the petitioner was convicted of, and sentenced for conspiracy to kidnap, false imprisonment, conspiracy to falsely imprison, extortion, conspiracy to extort, assault and battery, and use of a handgun in the commission of a crime of violence. Those sentences, which ranged from five to seven years, were ordered to run concurrently with the sentence for kidnapping. The court granted motions for judgments of acquittal as to assault with intent to maim, at the end

direct appeal, the Court of Special Appeals affirmed the convictions in an unpublished opinion.

Pursuant to the Maryland Post Conviction Procedure Act, Art. 27, §§ 645A–645J and Maryland Rules 4–401–408, the petitioner filed a petition for post conviction relief, in which he alleged that he "was denied the effective assistance of counsel at trial in that his attorney ... failed to adequately and competently represent him." One of the bases offered in support of that allegation was the failure of the petitioner's counsel, who was also Grimes's counsel, to advise him, before the trial, that he could receive a mandatory 25 year sentence. The prejudice accruing to him, he argued, was his inability to take advantage of a plea agreement providing a more favorable disposition than the sentence he ultimately received.[4]

The petitioner's trial attorney testified at the post conviction hearing that just before the start of trial the State "agreed to accept a plea to assault with intent to maim, which carried a ten year maximum penalty." [5] The petitioner, without challenge by the State and consistent with the

of the State's case, and as to assault and use of a handgun in the commission of a felony, at the end of the entire case.

4. The petitioner's arguments at the post conviction proceeding, as in the Court of Special Appeals, were broad based. He also argued that a conflict of interest caused his counsel to render greater assistance to his co-defendant, who retained and paid him, than to him. Another ground offered by the petitioner was the seating arrangement at the trial. Because he was seated next to his co-defendant, who, in turn, was seated next to counsel, the petitioner maintained that his ability to communicate with counsel was inhibited. The petitioner also asserted that counsel failed to discuss the case with him face-to-face and separate from his co-defendant, to follow through on his request that the trial be severed and to be available to discuss the petitioner's defense, all further demonstrating the inadequacy of his representation. We find none of these contentions to be meritorious.

5. The maximum penalty for committing an assault with intent to maim is currently 15 years imprisonment. Maryland Code (1957, 1992 Repl.Vol.), Art. 27, § 386; *see* 1991 Md.Laws 234, § 1. When the plea offer was made, however, the maximum penalty was ten years imprisonment, *see* Maryland Code (1957, 1982 Repl.Vol.), and that is controlling here.

trial court's finding, characterizes the plea as contemplating "a sentence with a 10 year cap." Contrary to the petitioner's recollection (he had previously testified that no plea offer was communicated to him at any time prior to, or even after, the start of the trial), counsel testified that the offer was discussed with both defendants, one of whom, Grimes, adamantly refused it, and the other, the petitioner, "indicated that he wanted to do what Mr. Grimes would."

The notice of intention to seek mandatory sentence was filed by the State subsequent to the petitioner's conviction. Consequently, the petitioner's trial counsel did not know when he tried the case that the State intended to seek an Art. 27, § 643B mandatory sentence. On the other hand, counsel was so familiar with the petitioner's criminal background that on that basis, he advised the petitioner not to testify at trial. Armed with that information, he should have anticipated the possibility that the State would seek a mandatory 25 year sentence. Counsel candidly testified, however, that, prior to trial or conviction, he neither discussed with petitioner the possibility that he could receive a mandatory sentence, nor did he know that petitioner was eligible to receive one.

The record does not reflect that the State's plea offer was conditioned on its being accepted by both defendants. On the other hand, it is clear that the offer was made to both defendants.

The post conviction court filed a memorandum opinion and order, in which it made clear that failure to inform the petitioner of the possible mandatory sentence of 25 years without parole "shows ineffective assistance of trial counsel." The court, however, did not delineate very clearly how that prejudiced the petitioner. The court did mention several factors: the State agreed to a plea offer with a ten year cap which was communicated to the petitioner; no advice was given concerning the potential mandatory sentence which, in addition to providing context for the plea offer, would have provided the petitioner with information with which realistically to assess his exposure; and, upon

being told of the effect of testifying in light of his criminal record, the petitioner followed counsel's advice and refrained from testifying at trial.

Reversing the circuit court, the Court of Special Appeals held that the petitioner was not prejudiced by counsel's deficient performance. As the court saw it:

[F]or Williams to be entitled to relief on that basis, it must be shown that the State would have been willing to offer Williams a separate plea bargain. No such showing was made in this case, and in the absence of some showing that a plea bargain would have been available, if requested, counsel's failure to explain to Williams the possible sentencing consequences did not prejudice Williams. The prejudice prong of the *Strickland* test not having been met, no basis exists to rule that counsel was ineffective because he failed to inform Williams that he faced a mandatory 25 year sentence without parole.

## II.

The test to be used in assessing the adequacy of counsel's performance in representing a defendant was enunciated by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish a claim of ineffective assistance of counsel, a defendant must prove both:

"(1) counsel's performance was deficient; *and*

(2) the deficient performance prejudiced the defense."

*Bowers v. State*, 320 Md. 416, 424, 578 A.2d 734, 738 (1990) (emphasis in original). The *Strickland* test was explicated in *Harris v. State*, 303 Md. 685, 496 A.2d 1074 (1985) and, more recently, in *Bowers v. State, supra*. Because the burden of proof is on the defendant to establish ineffective assistance of counsel, *Bowers*, 320 Md. at 424, 578 A.2d at 738, as to the first prong, a defendant must prove, that, under prevailing professional norms, his counsel's representation, objectively speaking, fell below a standard of reasonableness. *Strickland v. Washington*, 466 U.S. at 688, 104

S.Ct. at 2064, 80 L.Ed.2d at 693; *Bowers,* 320 Md. at 424, 578 A.2d at 738; *see also Harris,* 303 Md. at 698–99, 496 A.2d at 1080–81.

Because this is not a case in which prejudice may be presumed, *see Bowers,* 320 Md. at 425, 578 A.2d at 738, the second prong requires the defendant affirmatively to prove prejudice. Thus, the defendant must prove that "the particular and unreasonable errors of counsel 'actually had an adverse effect on the defense.' " *Bowers,* 320 Md. at 425, 578 A.2d at 738, quoting *Strickland,* 466 U.S. at 693, 104 S.Ct. at 2067, 80 L.Ed.2d at 697.

We recently conducted an analysis of the "tests for determining whether counsel's representation is so defective that it is constitutionally ineffective." *Bowers,* 320 Md. at 423, 423–27, 578 A.2d at 737, 737–39. We began by acknowledging that "[t]he right to counsel plays a crucial role in the adversarial system embodied in the Sixth Amendment, since access to counsel's skill and knowledge is necessary to accord defendants the 'ample opportunity to meet the case of the prosecution' to which they are entitled." 320 Md. at 424, 578 A.2d at 737–38, quoting *Strickland,* 466 U.S. at 685, 104 S.Ct. at 2063, 80 L.Ed.2d at 692 (quoting *Adams v. United States ex rel. McCann,* 317 U.S. 269, 275, 276, 63 S.Ct. 236, 240, 87 L.Ed. 268, 273 (1942)). We then reasoned:

> To show that an error of counsel "actually had an adverse effect on the defense" may seem to be an almost impossibly high requirement. But surely the Supreme Court did not intend a *Strickland* analysis to be a total barrier to relief in ineffective assistance cases. *See Sullivan v. Fairman,* 819 F.2d 1382 (7th Cir.1987). And indeed, the *Strickland* Court's further discussion of the performance standard indicates the "actually had an adverse effect" language is not to be read literally.

> After stating the "actually had an adverse effect" criterion, the Court went on to explain that it would not be sufficient for the defendant to show merely "that the errors had some conceivable effect on the outcome of the

proceedings." 466 U.S. at 693, 104 S.Ct. at 2067, 80
L.Ed.2d at 697. After all, virtually any error could have
some *conceivable* effect on the outcome. But "[o]n the
other hand, we believe that a defendant need not show
that counsel's deficient conduct more likely than not
altered the outcome in the case." *Id.*, [at 693,] 104 S.Ct.
at 2068, 80 L.Ed.2d at 697. In other words, the preju-
dicial effect of counsel's deficient performance need not
meet a preponderance of the evidence standard. The
Court at one point indicated that the test is whether the
trial can be relied on "as having produced a just result."
*Id.* at 686, 104 S.Ct. at 2064, 80 L.Ed.2d at 692–693.

In explicating the standard it adopted as the appropri-
ate measure of prejudice, the Court rejected the "high
standard for newly discovered evidence claims." *Id.* at
694, 104 S.Ct. at 2068, 80 L.Ed.2d at 697. We ourselves
have recently had occasion to consider the proper stan-
dard to use in cases of newly discovered evidence, and we
came to a conclusion much like the one the Supreme
Court reached in *Strickland.*

In *Yorke v. State,* 315 Md. 578, 556 A.2d 230 (1989), we
had to decide what degree of impact on the outcome of a
trial would justify the granting of a new trial on the
ground of material newly discovered evidence. Judge
Orth, for the Court, explained that other jurisdictions
"apply essentially the 'might' standard or the 'probable'
standard," both of which he described as "rather nebu-
lous." 315 Md. at 586, 556 A.2d at 233. After careful
review of the various possibilities, we chose "a standard
that falls between 'probable,' which is less demanding
than 'beyond a reasonable doubt,' and 'might' which is
less stringent than probable." *Id.* at 588, 556 A.2d at
234–35. We thought a workable standard was:

> The newly discovered evidence may well have produced
> a different result, that is, there was a substantial or
> significant possibility that the verdict of the trier of
> fact would have been affected.

*Id.*, 556 A.2d at 235.

*Bowers,* 320 Md. at 425–26, 578 A.2d at 738–39 (emphasis in original). We concluded that "substantial possibility," as defined in *Yorke,* "aptly describes the prejudice standard the Supreme Court adopted in *Strickland." Bowers,* 320 Md. at 427, 578 A.2d at 739. We have not retreated from the use of that standard and, so, we apply it here.

## III.

It is not disputed that trial counsel never advised the petitioner that he faced a possible mandatory sentence. Nor does the State contend that trial counsel's omission was reasonable. Thus, rather than focus on the performance prong, the State maintains that the petitioner failed to prove that his counsel's deficient performance prejudiced him. It argues that, because the test is a subjective one, to show prejudice, the petitioner had to show that he would have accepted the plea agreement that the State offered at the trial table just prior to trial. *See Hill v. Lockhart,* 877 F.2d 698, 703 n. 11, *vacated,* 883 F.2d 53, panel opinion adopted *en banc,* 894 F.2d 1009 (8th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 3258, 111 L.Ed.2d 767 (1990). That burden has not been met, it asserts, by an "unsupported and self-serving claim that he would have taken a plea," which is all the evidence that the petitioner produced.

Alternatively, the State contends that post conviction relief was correctly refused because the petitioner did not prove that the plea offer was available to him alone, rather than only jointly with his co-defendant. Without that proof, the State says, the petitioner simply was not prejudiced. It argues, in that regard, that the prosecution was prepared for trial, its witnesses being present and ready to testify, the case against the petitioner was "overwhelming," and, because the same evidence was admissible against both defendants, the same case would have had to have been presented even had one pled guilty, there was no incentive for a separate plea agreement.

## IV.

■ Trial counsel's testimony regarding the plea offer made just prior to trial did not specify whether, and if so, how, that plea offer was limited. He testified that the offer was made to both defendants. The State made no attempt to refute the inference that the plea offer was available to either defendant or, when the burden of production shifted to it, to produce evidence that the offer was only available to the defendants as a unit. Contrary to the State's position, there was a sufficient demonstration that there was a plea offer which the petitioner could accept, whether or not his co-defendant did. When a plea offer containing no express limitation is made in a case involving more than one defendant, it may be assumed that the offer may be accepted by either defendant, without regard to what the other might do.[6] Indeed, the finding that the offer was available to the petitioner alone is implicit in the post conviction court's decision.

---

**6.** The court in *Turner v. State of Tennessee,* 858 F.2d 1201 (6th Cir.1988), *vacated on other grounds,* 492 U.S. 902, 109 S.Ct. 3208, 106 L.Ed.2d 559 (1989) rejected a similar challenge by the State of Tennessee. The State argued that, because Turner failed to establish that the court would have approved the plea offer in that case, he did not meet his burden of proving prejudice. The court disagreed, holding that it was "unfair and unwise to require litigants to speculate as to how a particular judge would have acted under particular circumstance." *Id.* at 1207 (footnote omitted). It went on to observe:

We find it much more significant that the State can point to no evidence that indicates that the state trial court would not have approved the two-year plea arrangement. We believe that, if the State wishes to suggest that the trial court would not have approved the plea arrangement, the State, and not Turner, bears the burden of persuasion.

*Id. Berger v. Kemp,* 483 U.S. 776, 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987) and *Smith v. Regan,* 583 F.2d 72 (2nd Cir.1978), relied on by the State, are inapposite. In *Kemp,* no plea offer was made and the evidence was that this was so despite counsel's efforts to obtain one. 483 U.S. at 786, 107 S.Ct. at 3121, 97 L.Ed.2d at 652. In *Regan,* the only plea offered the co-defendants was a "'package' or 'both or nothing' deal," 583 F.2d at 76, which both defendants rejected. The court noted that, given the strength of its case, "there was no reason for the State, once it was required to try its case against one defendant not to go to trial against both." *Id.*

■ A trial attorney performs deficiently when he or she does not disclose to the client that the State has made a plea offer. *U.S. v. Rodriguez,* 929 F.2d 747, 752 (1st Cir.1991); *Johnson v. Duckworth,* 793 F.2d 898, 902 (7th Cir.), *cert. denied,* 479 U.S. 937, 107 S.Ct. 416, 93 L.Ed.2d 367 (1986); *Caruso v. Zelinsky,* 689 F.2d 435, 438 (3rd Cir.1982); *Barentine v. U.S.,* 728 F.Supp. 1241, 1251 (W.D.N.C.1990); *Williams v. Arn,* 654 F.Supp. 226, 235–36 (N.D.Ohio 1986); *Rasmussen v. State,* 280 Ark. 472, 658 S.W.2d 867, 868 (1983); *Lloyd v. State,* 258 Ga. 645, 373 S.E.2d 1, 3 (1988); *Lyles v. State,* 178 Ind.App. 398, 382 N.E.2d 991, 994 (1978); *State v. Simmons,* 65 N.C.App. 294, 309 S.E.2d 493, 497 (1983); *Ex parte Wilson,* 724 S.W.2d 72, 74 (Tx.Cr.App. 1987). So, too, does a trial attorney who, while disclosing the plea offer, provides the defendant with incomplete or misleading information with regard to the offer. *See Turner v. State of Tennessee,* 858 F.2d 1201, 1205 (6th Cir.1988), *vacated on other grounds,* 492 U.S. 902, 109 S.Ct. 3208, 106 L.Ed.2d 559 (1989) (erroneous advice to defendant to reject plea offer); *Beckham v. Wainwright,* 639 F.2d 262, 265–66 (5th Cir.1981) (counsel's failure to be aware of, and advise client as to, the consequences of withdrawing a guilty plea and proceeding to trial); *Lewandowski v. Makel,* 754 F.Supp. 1142, 1147 (W.D.Mich.1990) ("[C]ounsel's failure to inform client of significant aspects of the law regarding the risk of an appeal. . . ."); *People v. Pollard,* 231 Cal.App.3d 823, 282 Cal.Rptr. 588, 594, *cert. granted,* 286 Cal.Rptr. 778, 818 P.2d 61 (1991) (when counsel fails "to advise or has misstated some aspect of the law important to the intelligent evaluation of the [plea] offer, deficient representation has been demonstrated."); *Commonwealth of Pennsylvania v. Napper,* 254 Pa.Super. 54, 385 A.2d 521, 524 (1978) (counsel's failure "to make clear . . . 'the risk, hazards or prospects of the case.' "); *State v. James,* 48 Wash.App. 353, 739 P.2d 1161, 1167 (1987) (to effectively assist client, counsel must aid client in making an informed decision to accept or reject plea offer by discussing with client the strengths and weaknesses of client's case); *Tucker v. Holland,* 174 W.Va. 409, 327 S.E.2d 388, 394 (1985) (counsel's

advice must be accurate to enable client to make an informed choice whether to accept plea); *State v. Ludwig,* 124 Wis.2d 600, 369 N.W.2d 722, 726 (1985) (effective assistance of counsel includes informing "the defendant of the legal options and ramifications of those options....").

Acceptance of a plea offer that would expose him to a maximum sentence of ten years was an option available to petitioner, and the failure of his attorney to advise the petitioner of his exposure of the imposition of a mandatory 25 year sentence was deficient conduct. Where there is no plea agreement providing more favorable terms than the mandatory sentence to which the client may have been subjected, that failure, while indicative of counsel's deficient performance, may not be prejudicial. It is the existence of a plea agreement with more favorable terms than those required by imposition of a mandatory sentence that renders the omission potentially prejudicial. Whether prejudice actually occurs requires consideration of the proof offered by the client regarding what would have been done with proper and adequate advice.

Unlike the State, the petitioner does not believe that in order to prevail, it is necessary that the record contain "objective" evidence that he was prejudiced, that is, that he would have accepted the plea agreement offered by the State. He endorses the position enunciated in *People v. Pollard, supra,* 282 Cal.Rptr. at 594,: "[t]he defendant must show that but for the failure to convey the offer or to misadvise concerning the law, it is reasonably probable that the defendant would have accepted the offer." On the other hand, it is enough, the petitioner asserts, that "counsel's failure to inform the petitioner of the consequences of going to trial precluded him from making a knowing and intelligent decision to accept the offer." In other words, it is his inability to make an informed choice that is the critical fact, not whether, on an objective basis, he would have reached a different conclusion. In either case, the petitioner maintains that we need not look for "objective" evidence of his intention. All that is required is that the totality of

the evidence supports an inference that the outcome "may well" have been different had he been fully and accurately informed.

There are cases that eschew "subjective, self-serving" statements by a defendant, instead looking for, and relying on, objective evidence that the defendant would have acted differently upon being apprised adequately of the situation. *E.g. Turner, supra*, 858 F.2d at 1206–07; *Lewandowski, supra*, 754 F.Supp. at 1147.[7] Other courts have refused to characterize the evidence required to show prejudice as either "subjective" or "objective" and have looked to the "facts of each case" to see if "there is at least an inference from the evidence" that such prejudice exists. *E.g., Lloyd, supra*, 373 S.E.2d at 3.[8] *See also Hanzelka v. State*, 682

---

7. In *Johnson v. Duckworth*, 793 F.2d 898, 902 n. 3 (7th Cir.), *cert. denied*, 479 U.S. 937, 107 S.Ct. 416, 93 L.Ed.2d 367 (1986), in dicta, the court indicated that it would apply an objective standard when the issue of prejudice resulting from a deficient performance by counsel is before it:

> Johnson does not argue or allege in his brief, however, "that there is a reasonable probability that, but for counsel's error," he would have accepted the plea agreement.... Although he argues that he would have been able to accept the agreement but for Carmouche's actions, his freedom to act does not establish a reasonable probability that he would have acted. It is true that, for the first time in his reply brief, Johnson does cite his testimony from the post-conviction challenge to his attorney's actions which he claims illustrates his desire to plead guilty in conjunction with accepting the plea agreement. Nonetheless, Johnson cites no evidence prior to his conviction which would indicate any desire on his part to plead guilty to a lesser charge. Under these circumstances, we seriously doubt whether Johnson's after-the-fact testimony regarding his wishes in and of itself would be sufficient to establish that prior to trial, but for Carmouche's actions, there was a reasonable probability he would have accepted the plea agreement. (citations omitted)

8. Upon a review of the entire record, the court, in *Lloyd v. State*, 258 Ga. 645, 373 S.E.2d 1, 3 (1988), concluded that no inference could be drawn that the defendant in that case would have accepted the offer, or any counter offer, that was made. It is significant that in that case, trial counsel, who did not communicate the offer to the defendant "implied that had he communicated the offer to Lloyd, he would have recommended against it [and e]ven the trial judge commented that

S.W.2d 385, 387 (Tex.App.1984); *People v. Whitfield,* 40 Ill.2d 308, 239 N.E.2d 850, 852 (1968); *Curl v. State,* 272 Ind. 605, 400 N.E.2d 775, 777 (1980); *Lyles, supra,* 382 N.E.2d at 994; *Simmons, supra,* 309 S.E.2d at 498. *Lloyd* characterizes those cases as simply presuming prejudice from the fact that acceptance of a plea offer available to the defendant would have resulted in more favorable treatment than he or she actually received. These cases may be viewed, and we so view them, as focusing on an important fact from which the inference could be drawn that the defendant with more, or better, information, would have acted differently. In any case, the attempt is to determine whether, but for the deficient performance by counsel, there is a substantial possibility that the defendant would have accepted the plea agreement.

In *Turner,* the "objective" evidence found sufficient was the defendant's response to a two year plea offer by proposing a one year counter offer and the lower court's finding that the defendant was under the control of his attorney, who, with only a slight change in his advice, could have ensured a plea. 858 F.2d at 1206. In *Lewandowski,* when previously clearly advised as to the consequences of going to trial, the defendant had pled guilty. The court viewed that fact as objective evidence that, "with competent legal counsel and advice, it is reasonable to believe that when faced with the real possibility of going to trial on first degree murder, petitioner would have changed his mind and withdrawn his appeal to vacate his plea." 754 F.Supp. at 1150.

█ In the case *sub judice,* the plea offer is certainly more favorable than the sentence the petitioner actually received. Furthermore, the record reflects that, when previously fully and accurately advised, in light of his criminal history, of the consequences of testifying, the petitioner following counsel's advice, elected not to testify. And the

---

had he been on the jury, he would have voted to acquit." 373 S.E.2d at 2 n. 3.

petitioner has, after the fact, indicated that had he been told of the possible mandatory sentence, he would have accepted the plea. Upon our independent constitutional appraisal of this record, *Harris*, 303 Md. at 697–98, 496 A.2d at 1080, it may be inferred that, had he been as clearly and fully advised concerning the potential mandatory sentence as he was concerning the consequences of testifying, the petitioner "may well" have opted to accept the plea agreement, *i.e.*, there is at least a "substantial possibility" that the outcome would have been different. The inference is supported by "objective" evidence—the petitioner's prior acceptance of his counsel's advice to remain silent. *See Turner* and *Lewandowski, both supra.* Accordingly, the evidence of prejudice in this case is ample.

The Court of Special Appeals erred in finding that the petitioner was not prejudiced by the failure of his counsel to inform him of the possible mandatory sentence.

## V.

Although the petitioner requested a new trial and the post conviction court ordered one, it is significant that the only incompetence of counsel we have determined to exist pertains to the deprivation of the petitioner's opportunity to have accepted a plea agreement more favorable than the mandatory sentence that he faced. This raises the question of the appropriate remedy for that incompetence. In *United States v. Morrison*, 449 U.S. 361, 364, 101 S.Ct. 665, 668, 66 L.Ed.2d 564, 568 (1981), the Supreme Court pointed out that relief from a violation of the Sixth Amendment right to the effective assistance of counsel should be tailored to fit the circumstances of the case. A new trial is not the appropriate remedy since the violation did not impact the fairness of the trial. *Turner*, 858 F.2d at 1208. Had counsel performed competently in this case, advising the petitioner of the mandatory sentence he faced, the most the petitioner could have done would have been to accept the plea offer. Giving him that opportunity now will place him in the same position he would have been in but for the

incompetence of his counsel. Accordingly, we will direct that the case be remanded to the Circuit Court for Anne Arundel County so that the petitioner may enter a plea of guilty pursuant to the plea offer.[9]  Upon acceptance of a plea of guilty to the charge of assault with intent to maim, the trial judge should proceed to impose sentence. In the unlikely event petitioner declines to enter a plea of guilty within 30 days after the issuance of our mandate, the trial judge shall reinstate the original convictions and sentence.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO VACATE THE JUDGMENTS AND TO REMAND THE CASE TO THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY FOR FURTHER PRO-CEEDINGS CONSISTENT WITH THIS OPINION. COSTS IN THIS COURT AND IN THE COURT OF SPE-CIAL APPEALS TO BE PAID BY ANNE ARUNDEL COUNTY.

MURPHY, C.J., and CHASANOW, J., concur in the result only. They believe that the test enunciated by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) is that there must be a "reasonable probability" that counsel's deficient conduct affected the result.

---

**9.**  Because the trial judge granted the petitioner's motion for judgment of acquittal on the charge of assault with intent to maim, in order to avail himself of the plea offer, the petitioner must consent to the vacation of that judgment.