Walter T. KATES

v.

UNITED STATES of America.

Criminal No. 92–00100–02.

United States District Court,
E.D. Pennsylvania.

May 24, 1996.

J. Kenneth Lowrie, Organized Crime & Racketeering Section, Criminal Division, Justice Department, Washington, DC, for U.S.

Christopher Warren, DeStafano & Warren, PC, Philadelphia, PA, for Defendant.

**OPINION**

GAWTHROP, District Judge.

Petitioner, Walter T. Kates, filed a motion to vacate, set aside, or correct his criminal sentence under 28 U.S.C. § 2255, alleging ineffective assistance of counsel, and requesting a hearing, which was held. Upon the following reasoning, I shall grant the motion.

A jury convicted Mr. Kates of (1) conspiracy to distribute and possess with intent to distribute methamphetamine, (2) distribution

of methamphetamine, and (3) two counts of possession with intent to distribute methamphetamine, for violations of 21 U.S.C. § 841 (1988 & Supp. II 1990), 21 U.S.C. § 846 (1988), and 18 U.S.C. § 2 (1988). On October 4, 1993, he was sentenced as a career offender to 360 months imprisonment, the minimum sentence permissible under the United States Sentencing Guidelines. The Third Circuit affirmed both the conviction and the sentence. *See United States v. Kates*, 27 F.3d 559 (3d Cir. filed May 23, 1994).

Over the course of these proceedings, Mr. Kates has been represented by a variety of lawyers, one each to handle his arraignment, his trial, his sentence and appeal, and now his § 2255 motion. Mr. Kates is forty-five years of age.

In his § 2255 motion Mr. Kates contends that his attorneys were prejudicially deficient because they failed (1) to explain clearly the plea bargain offered and (2) to distinguish between D- and L-methamphetamine, as this distinction relates to his sentence. At the evidentiary hearing on this motion, Mr. Kates withdrew the second ground, and I thus consider his claim of ineffective assistance of counsel only with respect to the alleged deficiency regarding plea bargaining.

Mr. Kates claims that because counsel never informed him that he faced a possible mandatory minimum sentence of 360 months imprisonment if he stood trial, he was denied effective assistance of counsel.[1] He contends that had counsel told him that if he rejected the bargain, went to trial, and was convicted, he would have faced a prison sentence of not less than 30 years, he would not have run that risk, but would have accepted the government's offer and pled guilty. Instead, he went to trial and is now suffering the consequences. He has maintained his innocence throughout.

To prevail on an ineffective-assistance-of-counsel claim, a defendant must clear two probative hurdles. First, he must prove that his counsel's performance was so unreasonable, considering all of the circumstances,

1. Under the Guidelines, because the instant offense involved approximately 880 grams of methamphetamine, Mr. Kates's conviction and prior criminal history yielded a Base Offense Level 30 and a Criminal History Category IV. I found that Mr. Kates was a career offender under § 4B1.1, however, and sentenced him as if he had a Base Offense Level 37 and a Criminal History Category VI. Mr. Kates faced a sentence range between 360 months and life imprisonment. I sentenced him to the statutory minimum of 360 months.

that it denied him his Sixth Amendment rights. *Strickland v. Washington*, 466 U.S. 668, 687–91, 104 S.Ct. 2052, 2064–67, 80 L.Ed.2d 674 (1984). Second, he must prove that counsel's ineffectiveness caused him to be prejudiced.

I turn first to the alleged deficient performance of counsel. The government prepared and presented a proposed plea agreement to Joseph M. Gontram, Esq., Mr. Kates's first attorney. Under that agreement, Mr. Kates would plead guilty to conspiracy, acknowledge his guilt as charged in the indictment, and cooperate with the government, including testifying before a grand jury and at trial if called upon so to do. The agreement called for the government's moving to dismiss the other counts of the indictment, contingent upon Mr. Kate's cooperation. For the conspiracy count, under 21 U.S.C. §§ 841 and 846, Mr. Kates faced a maximum sentence of 40 years imprisonment, with a mandatory minimum of five years. If the government, in its sole discretion, found Mr. Kates to have cooperated sufficiently to sate their purposes, they agreed to file a motion pursuant to § 5K1.1 of the Guidelines and 18 U.S.C. § 3553(a), which would authorize the court to depart downwards from the minimum Guideline range as well as the five-year statutory minimum. (Pet'r Ex. C).

At his § 2255 hearing, each of Mr. Kates's prior lawyers testified that he did not tell Mr. Kates that, under the Guidelines, he faced a sentence of between 30 years and life, if convicted, as opposed to the government's offer of 5 to 40, with a possible downward departure below the 5. Mr. Gontram said he was not sure whether he had explained the Guidelines computations to Mr. Kates; he said he did not recall performing the actual calculation, but that he believed that he had discussed the Guidelines generally with his client.

When pressed on this point, Mr. Gontram referred to the mandatory minimum contained within the plea agreement, but testified in generalities, stating that "I did advise him that these numbers were to be increased without a deal, because of the very real possibility that the Government would file papers with the court with respect to previous convictions." (Transcript of § 2255 hearing at 113–14) ("Trans."). There is no evidence, however, that Mr. Gontram performed the actual Guidelines calculations or that he apprised Mr. Kates with specificity of the three-decade Guideline minimum he faced if convicted.

Mr. Kate's two succeeding attorneys testified more directly on this subject. Robert Scandone, Esq., his trial attorney, testified:

Q: Did you tell him [Mr. Kates] that he was going to do 30 years if he went to trial, that it was mandatory and the judge had no discretion?

A: Absolutely not. The only thing I said to him if he lost he was going to go to jail for a long time.

(Trans. at 137).

Mark W. Catanzaro, Esq., his attorney at sentencing, testified similarly:

Q: When you were discussing this plea with Kates, did you tell him if he rejected it and was convicted, he would do 30 years minimum, no parole?

A: No ... I indicated Mr. Kates if he went to trial and lost, he was going to be sentenced to a very extensive period of time.

Q: You didn't say he was a career offender?

A: No.

Q: You didn't take him through the guidelines?

A: No.

(Trans. at 152–53).

The government argues that, because Mr. Kates's attorneys found it difficult to deal with him, and Mr. Kates was adamant about not accepting the plea agreement, his attorneys were not ineffective. Having come to know Walter Kates quite well, albeit from the relatively far reaches of the bench, I agree that he is not the easiest of customers. Difficult he can be. But when one undertakes the stewardship of a client on the

nether end of a criminal caption, one assumes the risk that not every little tête-à-tête with that client will be all peaches and cream. One just has to overcome that and get across the salient facts, necessary for that client to make an intelligent decision. The client has a right not to be left in the foggy dark.

From the proposed agreement, one would tend to be lulled into thinking that one was, at most, looking at five years. Thirty years is a distinction with a difference—something that can make a significant dent in the remainder of a 45–year–old's life. His attorneys' failure to inform Mr. Kates about his actual sentence exposure was unreasonable. Absent that vital, bottom-line information, he could not make an intelligent decision about whether to stand trial or accept the government's offer. The caselaw teaches that where an attorney has incorrectly or insufficiently advised a defendant regarding the plea agreement, such that the defendant could not make an intelligent decision about whether to accept it or not, then counsel has failed to provide effective assistance. *United States v. Day*, 969 F.2d 39, 43 (3d Cir.1992). The defendant's knowledge of the comparative sentence exposure between going to trial and accepting a plea agreement may be central to this decision. I find, therefore, that Mr. Kates has satisfied his burden of proving unreasonableness, the first prong of *Strickland*.

■ As for actual prejudice, *Strickland*'s second prong, Mr. Kates must show that there is a reasonable probability that he would have accepted the government's plea agreement.[2] *Day*, 969 F.2d at 45 n. 8. A defendant can prove reasonable probability by: (1) testifying that he would have accepted the plea, (2) proving that the proposed plea agreement was much more favorable than the actual sentence, and (3) proving that at trial he followed counsel's advice not to testify in light of his criminal history. *Day*, 969 F.2d at 46 (citing *Williams v. State*, 326 Md. 367, 605 A.2d 103 (1992)). I consider the evidence in the context of this tripartite test.

Mr. Kates testified at the § 2255 hearing that had he known that he faced a mandatory minimum of sentence of 30 years, he would have taken the deal. The government suggests that this is but a post-conviction effort to eat his cake and have it, to grab the benefit of a deal which he had spurned, having already put the government to the test of trial. Judge Waldman has characterized this as sandbagging. *Day*, 969 F.2d at 46 n. 9.

Mr. Kates is an adamant man, full of fighting fervor. He felt the intensity of his cause as few that I have seen. But just as he is adamant, neither is he dumb.[3] He says that had he known he would have been looking at a possible five years or less,[4] as opposed to a certain (assuming conviction) 30 years to life, that drastic difference would have been a sufficiently persuasive influence to cause him to change his plea and cooperate. Mr. Kates's credibility is not an easy nut to crack. The vigor of his repeated professions of innocence has always seemed so unshakable. But I have seen many a defendant, seemingly utterly intransigent as to the possibility of pleading guilty, finally cave in when confronted with the ugly reality of what probably would happen to him if he did not. I conclude that Mr. Kates falls within this category. At least, suffice it to say that I do find as a fact that there is a reasonable probability that he would have accepted the government's plea agreement. Thus, I conclude that Mr. Kates has been denied his Sixth Amendment right to effective assistance of counsel.

■ I turn now to the relief to which Mr. Kates is entitled for the deprivation of his Sixth Amendment rights. The remedy for such a violation "should be tailored to the

---

2. Mr. Kates need not prove with certainty, or even by a preponderance of the evidence, that the outcome would have been different absent his attorneys' deficient performance. *Day*, 969 F.2d at 45 n. 8 (citing *Strickland*, 466 U.S. at 693–94, 104 S.Ct. at 2067–68, and *Hill v. Lockhart*, 474 U.S. 52, 57, 106 S.Ct. 366, 369–70, 88 L.Ed.2d 203 (1985)).

3. I refer to what I perceive to be his general intelligence, not to his foolhardy propensity to commit crimes such as those that bring him here today.

4. He did testify that his lawyers told him he was facing 12½ to 15 years—somewhat less than one-half the mandatory minimum. (Trans. at 23–24, 33, 38–39).

injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests." *United States v. Morrison,* 449 U.S. 361, 364, 101 S.Ct. 665, 668, 66 L.Ed.2d 564 (1981). *Day* collects some examples of possible remedies for this type of Sixth Amendment violation. One option is to give Mr. Kates a second opportunity to accept the plea agreement previously offered and to be resentenced accordingly. 969 F.2d at 47 (citing *Williams,* 605 A.2d at 110–11). He testified, however, that he has had no contact with and no longer knows the whereabouts of the people with whom he associated before his arrest in 1990 (Trans. at 49) and the parties concede that Mr. Kates's cooperation would no longer be valuable to the government. He no longer has any quid for the government's quo.

Another option might be to reinstate the plea negotiations and order a new trial if these negotiations fail. *Day,* 969 F.2d at 47 (citing *Commonwealth v. Napper,* 254 Pa.Super. 54, 385 A.2d 521 (1978)). That obviously would not work; as mentioned, he no longer has information of value to the government. Nothing is so stale as yesterday's news. It's a little bit like trying to renegotiate, or draw straws, for positions in the starting gate at Churchill Downs, after the garland of roses has already been draped. Nobody cares. There is nothing now to negotiate, at least insofar as Mr. Kates's cooperation might tend to sweeten his deal. Further, the government's case might no longer be so strong. Witnesses disappear; witnesses die; memories fade. This might strengthen Mr. Kates's hand, enabling him to strike a better bargain. But that seems neither fair, nor just. There is no perfect remedy, yet there must nevertheless be some remedy.

Balancing the equities, the competing pros and cons, I conclude that the least unjust resolution would be to resentence Mr. Kates upon his conviction, but without the career-offender finding under § 4B1.1. It is that provision that stuck him with a mandatory 30–year minimum, and it was that provision and his various attorneys' failure to let him in on it, to let him know of its devastating looming presence in his case, that made their assistance ineffective. I recognize that this tends to penalize the government, whisking away from its grasp in this case a significant sentencing enhancer, a factor that I have already found to be borne out by the facts and the law. This will, however, tend to allay at least some of the real harm to Mr. Kates caused by his attorneys' failure to inform him about the true range of his sentence exposure.

Perhaps we are coming to the point in the federal law of sentencing where a pre-colloquy colloquy is needed. About half the cases in this district entail 5K motions. With cases of cooperating guilty pleaders, if the government were to take a more assertive role in spelling out, on paper, not only its offers, but also the specific, possible consequences of not accepting those offers (such as the prospect of a mandatory 30 years to life), such after-the-fact misunderstandings and mutually unsatisfactory consequences as have occurred here could be avoided.

I shall resentence Mr. Kates consistent with the above opinion.

An Order follows.

## ORDER

AND NOW, this 24th day of May, 1996, it is hereby ordered that:

1. petitioner's Motion, pursuant to 28 U.S.C. § 2255, to Vacate, Set Aside or Correct the Criminal Sentence is GRANTED, and his previous sentence is VACATED;

2. petitioner shall be brought in for resentencing.