**Michael T. EUSTICE, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Defendant).**

No. 99–237.

Supreme Court of Wyoming.

Oct. 5, 2000.

---

Representing Appellant: Sylvia Lee Hackl, State Public Defender; Donna D. Domonkos, Appellate Counsel; and Tina M. Hughes, Assistant Appellate Counsel. Argument presented by Ms. Hughes.

Representing Appellee: Gay Woodhouse, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Robin Sessions Cooley, Senior Assistant Attorney General. Argument presented by Ms. Cooley.

Before LEHMAN, C.J., and THOMAS, MACY *, GOLDEN, and HILL, JJ.

HILL, Justice.

Michael Eustice (Appellant) appeals his conviction for aggravated assault and battery alleging that his trial counsel failed to provide effective assistance of counsel. Appellant also claims that the jury's observation of him in restraints resulted in prejudice, and that the jury improperly considered punishment in reaching its verdict. We do not find any deficiency in counsel's performance or any other error and affirm Appellant's conviction.

Appellant presents six issues:

1. Did Appellant's pretrial counsel's failure to adequately and timely explain the offered plea bargain to Appellant constitute ineffective assistance of counsel?

2. Did the failure of Appellant's trial counsel to object to repeated hearsay, failure to offer an opening statement, and failure to object to improper closing argument and request a mistrial constitute ineffective assistance of counsel?

3. Did the failure of Appellant's trial counsel to interview and call witnesses at trial in Appellant's defense constitute ineffective assistance of counsel?

* Retired June 2, 2000.

4. Did the jury's view of Appellant in handcuffs and shackles during deliberations prejudice Appellant, and result in reversible error?

5. Did the failure of Appellant's trial counsel to request a mistrial after the jury viewed Appellant in handcuffs and shackles constitute ineffective assistance of counsel?

6. Was the jury's consideration during deliberations of possible sentences and punishment reversible error?

The State responds with these issues:

I. There is no evidence in the record that the jury considered matters extrinsic to the evidence in reaching a verdict. However, even if there was such evidence in the record, there is no evidence of prejudice requiring reversal.

   1. There is no evidence the jury saw Appellant in restraints. Even if it had, there is no evidence of prejudice and thus, no reversible error.

   2. There is no evidence the jury considered punishment or sentences in reaching a verdict. Even if it did, there is no evidence of prejudice and thus, no reversible error.

II. Appellant was not denied effective assistance of counsel.

   1. Appellant was adequately and timely notified of the offered plea agreement and declined the same.

   2. Appellant's counsel was not ineffective in failing to object to hearsay testimony.

   3. Appellant's counsel was not ineffective in waiving opening statements.

4. Appellant's counsel was not ineffective in failing to object to allegedly improper closing argument.

5. Appellant's counsel was not ineffective in failing to interview and call witnesses at trial.

6. Appellant's counsel was not ineffective in failing to request a mistrial after the jury allegedly viewed Appellant in restraints.

**FACTS**

On the evening of September 22, 1998, the victim was leaving the Lakeside Bar in Gillette, Wyoming, when she encountered Appellant, her "on-again/off-again" boyfriend, driving into the bar's parking lot. Appellant became angry with the victim when she denied having any drugs in her possession. Appellant followed the victim to her car, where he savagely assaulted her. The victim sustained numerous bruises on her arms, legs, back, and face. In addition, she suffered a basal skull fracture when Appellant slammed the back of her head into the car window at least three times. After leaving the victim unconscious in her vehicle, Appellant went into the bar. Appellant was subsequently arrested and charged with aggravated assault and battery.[1]

A jury trial was held April 19 through April 21, 1999. The jury returned a verdict of guilty, and Appellant was sentenced to a term of not less than 100 months and not more than 120 months in the Wyoming State Penitentiary. On appeal, Appellant challenges the performance of his trial counsel and alleges that he was prejudiced when the jury observed him in restraints and when it considered the punishments associated with the crime charged and the lesser-included

---

**1.** Wyo. Stat. Ann. § 6–2–502(a)(b) (LEXIS 1999) provides:

**§ 6–2–502. Aggravated assault and battery; penalty.**

(a) A person is guilty of aggravated assault and battery if he:

(i) Causes serious bodily injury to another intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life;

(ii) Attempts to cause, or intentionally or knowingly causes bodily injury to another with a deadly weapon;

(iii) Threatens to use a drawn deadly weapon on another unless reasonably necessary in defense of his person, property or abode or to prevent serious bodily injury to another; or

(iv) Intentionally, knowingly or recklessly causes bodily injury to a woman whom he knows is pregnant.

(b) Aggravated assault and battery is a felony punishable by imprisonment for not more than ten (10) years.

offense of simple battery in reaching its verdict. Additional facts related to the issues raised by Appellant in this appeal will be further developed in the discussion below.

## DISCUSSION

### A. *Jury observation of Appellant in restraints.*

■ Appellant alleges that the jury observed him in restraints, and that this prejudiced the jury against him. At the time of the alleged incident, Appellant was being taken back into the courtroom because the jury, which was in deliberations, had sent a note to the judge asking what the punishments were for aggravated assault and battery and for simple battery. Appellant claims that, as he was being transported to the courtroom, several jurors saw him in restraints, and that one juror even made eye contact with him. The jury returned its verdict before the court returned an answer to their question. Appellant alleges that the sight of him in restraints created a perception that he was a dangerous individual and, hence, was the precipitating factor leading to the jury's decision.

■ Jurors' observation of a handcuffed or restrained defendant does not constitute grounds for a mistrial based on a fundamental constitutional error absent a showing of prejudice. *Smith v. State*, 773 P.2d 139, 141 (Wyo.1989). A brief or incidental viewing by the jury of the defendant in restraints is not necessarily prejudicial; a defendant must make some showing of actual prejudice. *Id.*

Assuming that Appellant's characterization of the incident is true, he has failed to make a showing of actual prejudice. First, the viewing was brief and incidental in nature, apparently occurring while Appellant was being escorted into the courtroom. Second, the record shows that about 24 minutes elapsed from when the parties concluded the conference on the reply to the jurors' question and when the jury informed the court that it had reached a verdict. It is extremely unlikely that the jury could have observed Appellant in restraints, returned to the deliberation room, discussed the incident, and made a determination that simply because Appellant was in restraints he must be dangerous and that all of the jury instructions and two days of trial evidence should be ignored in order to reach a conviction solely on that basis—all in less than 24 minutes. Appellant is merely engaging in speculation and has fallen far short of demonstrating any actual prejudice.

### B. *Jury consideration of punishment in reaching verdict.*

■ During their deliberations, the jury referred a question to the court regarding the possible punishments for aggravated assault and battery and the lesser-included offense of simple battery. Appellant claims that this demonstrates that the jury was improperly considering punishments during its deliberations.

Assuming that it would have been error for the jury to consider the punishments attendant to the crimes charged in its deliberations, there is no evidence that the jury, in fact, actually considered punishment in reaching its verdict. Although the jury did inquire as to the applicable punishments, a verdict was reached before the court could respond. Clearly, the jury did not know what the punishments were since they had to ask the court the question. Thus, we are at a loss to see how the jury could have considered something about which it had no knowledge. Appellant's argument presents no evidence, only conjecture.

### C. *Assistance of counsel.*

The remaining issues raised by Appellant concern an allegedly deficient performance by his trial counsel. Claims of ineffective assistance of counsel are reviewed under the standard set by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984):

"First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This

requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable."

We invoke a strong presumption that counsel rendered adequate and reasonable assistance making all decisions within the bounds of reasonable professional judgment. *Jackson v. State*, 902 P.2d 1292, 1295 (Wyo.1995).

*Beadles v. State*, 984 P.2d 1083, 1085–86 (Wyo.1999) (quoting *Mapp v. State*, 953 P.2d 140, 143 (Wyo.1998)).

■ The first claim advanced by Appellant is that his trial counsel's failure to adequately and timely explain the details of an offered plea bargain constituted ineffectiveness. Appellant, who had changed counsel after the preliminary hearing, filed an affidavit days before his trial alleging the following:

3. That while represented by his previous attorney, "Andy" an investigator for the public defenders [sic] office came to the jail and after a brief conversation asked if he [Appellant] wanted a reckless endangerment, no explanation of any sort, your affiant [Appellant] not knowing what it was or the penalties that went with it;

4. That this was not even explained to your affiant as being a plea agreement or if there was a "cut off" date and what that date was;

5. That he [Appellant] learned the terms used above and most of the facts from one of the visits from his present attorney;

6. That his [Appellant's] present attorney has been trying to get the plea agreement reopened as when the attorney explained the above and the penalties, your affiant thought it in his best interest to take the bird in the hand rather [than] the two in the bush if, in fact, it was still available.

7. That had he known the true facts he would have jumped at the agreement because of [the] possible outcome of a felony trial;

8. That your affiant does not admit guilt by this affidavit, and, still, at this time maintains his innocence to the charge alleged.

9. That he has been greatly prejudiced by the actions or inactions of the public defenders [sic] office and it's [sic] employees.

It is unclear from Appellant's affidavit exactly when this conversation with the defense investigator occurred.

On the day of trial, the court attempted to address the allegations raised by Appellant. The trial court sought to explore the issue by offering Appellant an opportunity to testify, with the understanding that if he did testify, the inquiry would be specifically limited to the subject matter of the affidavit. Despite such assurances, Appellant refused to testify.

After the trial, the court once again sought to determine the merits of Appellant's allegations. The State called the defense investigator, Andy Fraser, to testify. According to Fraser, he was asked by Appellant's counsel to convey the terms of a plea offer to Appellant, apparently on the day of the preliminary hearing in November of 1998. Fraser stated that he was asked to convey the plea offer to Appellant because defense counsel was engaging in plea negotiations at that very moment with the prosecutor. Fraser indicated that he told Appellant of the proffered deal including the possible punishment for reckless endangerment, and that if the offer was rejected, the preliminary hearing would go ahead. Fraser did not make any other representation as to what might occur if Appellant rejected the offer. With this information in hand, Appellant elected to turn down the proposed plea agreement. Fraser admitted that he had no knowledge about any other plea offers that may have been made to Appellant at other times.

The record discloses several documents related to a possible plea offer. The first is the Criminal Case Management Order, which sets a plea cut-off date of December 19, 1998. The cut-off date was continued until January 15, 1999, based on a joint motion by defense counsel and the prosecution. The continuance was requested because the extent of the medical costs incurred by the victim was not yet known. Defense counsel filed a second

request for a continuance of the plea cut-off date on January 15, 1999, for the same reason. The court granted the request and extended the plea cut-off date until February 2, 1999. These documents represent the totality of the record in regard to any plea offers made to Appellant.

■ We have yet to directly address what constitutes ineffective assistance of counsel in the context of a plea offer. Courts that have considered the issue, however, agree that "the right to counsel is violated when defense counsel fails to inform a defendant of a plea offer or when counsel's incompetence results in a decision by a defendant to proceed to trial rather than plead guilty." *State v. Bristol,* 159 Vt. 334, 618 A.2d 1290, 1292 (1992); *see also People v. Carter,* 190 Mich.App. 459, 476 N.W.2d 436, 438 (1991); *Williams v. State,* 326 Md. 367, 605 A.2d 103, 108 (1992); *People v. Curry,* 178 Ill.2d 509, 227 Ill.Dec. 395, 687 N.E.2d 877, 882 (1997); and *Howard v. State,* 894 S.W.2d 104, 106 (Tex.App.—Beaumont 1995). In order to demonstrate ineffective assistance of counsel, Appellant must show that counsel's performance was deficient and that deficient performance resulted in prejudice. *Beadles,* 984 P.2d at 1085–86. In claims of ineffective assistance of counsel relating to plea offers, the defendant must show that his counsel failed to competently convey to him the terms and conditions of the plea agreement and the consequences of an acceptance or a rejection. *Bristol,* 618 A.2d at 1292; *Williams,* 605 A.2d at 108. Once that showing has been made, the defendant must also show that he was prejudiced in that if he had been fully informed about the terms of the proffered plea agreement, then he would have accepted it at that time. *Curry,* 227 Ill.Dec. 395, 687 N.E.2d at 887–89.

In this case, Appellant has failed to present evidence sufficient to rebut the strong presumption that his counsel acted with competence in regard to the plea offer. Appellant claims that the only time the offer was discussed with him was when the defense investigator talked to him prior to the preliminary hearing in November 1998. However, the record shows that defense counsel was at least exploring the possibility of a plea

agreement thereafter, since she twice filed motions to extend the cut-off date. Indeed, the last of these motions was filed almost three months after the alleged conversation between Appellant and the defense investigator, who admitted he was not involved in any plea discussions that may have occurred later.

■ The burden is on Appellant to affirmatively show that his counsel's performance was defective, and, in the absence of any such showing, we assume that his counsel's performance was, in fact, competent. Despite the opportunity presented to him by the trial court, Appellant did not present any evidence relating to the period from after the preliminary hearing in November 1998 until the final cut-off date for a plea agreement in February 1999, either through his own testimony or through that of his counsel. *See Howard,* 894 S.W.2d at 106 ("When the record contains no evidence to show the reasons for trial counsel's allegedly ineffective acts or omissions, we cannot conclude that counsel performed deficiently."). Since counsel acted competently in timely filing motions for a continuance of the cut-off date for a potential plea agreement, we must assume, absent any evidence to the contrary, that counsel competently conveyed the terms and conditions of any proffered plea agreement to Appellant. Accordingly, Appellant has failed to carry his burden of affirmatively demonstrating deficient performance by his counsel, and his claim thus fails, as well.

In his next claim, Appellant argues that his trial counsel was ineffective based on the failure to object to certain hearsay testimony, offer an opening statement, or object to an improper remark in the prosecutor's closing statement. First, Appellant claims that several witnesses gave improper hearsay testimony to which his counsel should have made an objection. The testimony complained of consists of the following: (1) a police officer testifying that the victim made a statement to the effect that she was not sure about pressing charges because she was afraid of Appellant; (2) the victim repeating statements made to her by the Appellant, a statement made to her by her son regarding what had happened to her face, and a statement

made by her doctor regarding the nature of her injuries; (3) testimony from the victim's son that when he arrived at the bar and asked his mother what had happened, she replied that Appellant had assaulted her; and, (4) testimony of another police officer who repeated the allegations of the victim that Appellant had assaulted her and who also testified about statements made by Appellant that night.

■ Appellant's "argument" regarding the testimony presented by these various witnesses consists of a single paragraph with no citations to authorities. Appellant makes a conclusory claim that these statements were used to "prove" that he was the person who assaulted the victim. We have repeatedly stated that arguments that are not cogent or supported by pertinent citations to authority will not be considered. *Blumhagen v. State*, 11 P.3d 889, 897 (Wyo.2000). Therefore, we will not consider Appellant's argument except to note that most, if not all, of the statements cited by Appellant were, in fact, admissible as an admission by a party-opponent (Appellant), a statement made for purposes of medical diagnosis or treatment, or an excited utterance. *See* W.R.E. 801(d)(2)(A); 803(2); and 803(4).

■ Appellant's trial counsel waived the opportunity to make an opening statement. Appellant acknowledges that the failure of counsel to give an opening does not, in and of itself, constitute ineffective assistance. However, he claims that the failure to offer an opening statement acted in conjunction with the other alleged failures in his counsel's performance to prejudice him.

■ The decision whether or not to present an opening statement is a trial strategy committed to counsel's discretion. *Ross v. State*, 392 So.2d 23, 24 (Fla.App.1980). Furthermore, Appellant's counsel did cross-examine witnesses, put forth defense witnesses, and gave a lengthy closing argument. Since we do not find any deficiencies in counsel's performance in any other instance, Appellant's argument is rejected.

■ Appellant complains about the prosecutor's statement in closing that Appel-

lant had "left her [the victim] there to die." He claims that this was tantamount to arguing an attempted murder charge, thus inflaming the jury with an irrelevant and unsupported accusation. We are not persuaded by this argument. A prosecutor is allowed to make a closing argument through reasonable inferences based on the evidence presented at trial. *Dennis v. State*, 963 P.2d 972, 976 (Wyo.1998). The testimony demonstrated that the victim had suffered a severe injury, a skull fracture. Furthermore, the evidence showed that after inflicting the injury on the victim, Appellant left her unconscious in her vehicle while he went inside the bar. One of the elements of the aggravated assault charge was that the circumstances manifested an extreme indifference to the value of human life on the part of Appellant. Wyo. Stat. Ann. § 6–2–502(a)(i) (LEXIS 1999). The prosecutor's remark was a reasonable inference under the circumstances of this case, as established by the evidence adduced at trial. There was no error.

■ Next, Appellant claims that his counsel was ineffective due to his failure to interview and call potential witnesses. In this context, we have said:

> The charge that a defendant was denied effective counsel because his attorney did not call witnesses has often been raised. The decision not to call witnesses is a strategic choice. *Amin [v. State ]* 811 P.2d [255], at 261–62 [ (Wyo.1991) ]; *Laing v. State*, 746 P.2d 1247, 1250 (Wyo.1987). In order to successfully show ineffective assistance of counsel, the appellant must present the facts about which the proposed witnesses would have testified. *Campbell [v. State ]*, 728 P.2d at 628 [ (Wyo.1986) ]. The decision whether to call witnesses is normally within the judgment of counsel and will rarely be second-guessed through appellate hindsight. *State v. Onishi*, 64 Haw. 62, 636 P.2d 742, 744 (1981).

*Hamburg v. State*, 820 P.2d 523, 528 (Wyo. 1991). Appellant's sole reference to the witnesses that his counsel allegedly failed to interview or call, and to their proposed testimony, is a citation to his own pretrial memorandum. This document simply lists a series

of possible witnesses along with vague statements of the testimony they might provide. This falls far short of a presentation of the facts about which the proposed witnesses would have testified that is necessary to overcome the strong presumption that the failure to call these witnesses was a strategic trial decision. Furthermore, none of these proposed witnesses were present during the assault. Thus, the most any of these witnesses could have offered as testimony would have concerned the relationship between the Appellant and the victim. Appellant fails to make any argument as to how this testimony, if offered, could have resulted in a different verdict. Appellant has failed to provide cogent argument on this issue.

In his final claim, Appellant argues that counsel's failure to request a mistrial after the jury viewed him in restraints constituted ineffective assistance of counsel. As noted above, there was no error or prejudice inherent in the brief viewing of Appellant while in restraints by the jury. In these circumstances, a request for a mistrial on this issue would have been futile, and counsel was not ineffective in not making such a request.

## CONCLUSION

There is a strong presumption that effective assistance of counsel has been rendered in criminal trials. Appellant has failed to demonstrate that his counsel's performance was deficient in any respect. Appellant's conviction and sentence are affirmed in all respects.