IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
February 6, 2018 Session

FILED
09/17/2018
Clerk of the
Appellate Courts

## MARLON YARBRO v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Hardin County**
**No. 9894PC  Charles C. McGinley, Judge**

_____

### No. W2017-00125-CCA-R3-PC

_____

This is a State appeal of the Hardin County Circuit Court's grant of post-conviction relief. The Petitioner was convicted by a jury of various drug related offenses including sale of .5 grams or more of a Schedule II controlled substance within 1000 feet of a school zone, see Tenn. Code Ann. §§ 39-17-417(c)(1), 39-17-432(b)-(c), for which he received an effective sentence of 25 years with no parole. State v. Marlon Yarbro, No. W2015-00475-CCA-R3-CD, 2015 WL 5813383, at *3 (Tenn. Crim. App. Oct. 5, 2015), perm. app. denied (Tenn. Feb. 18, 2016). After his conviction was affirmed by this court, the Petitioner filed a pro se petition for post-conviction relief which did not include as grounds for relief that trial counsel was ineffective in advising the Petitioner of his sentence range or a due process claim based on the Petitioner's rejection of a more favorable settlement offer from the State. Post-conviction counsel was appointed, and no amendments were filed. An evidentiary hearing was held, and the post-conviction court granted the Petitioner relief based on the evidence adduced at the post-conviction hearing. The State now appeals, raising the following issues: (1) whether the post-conviction court may, on its own initiative, constructively amend a post-conviction petition; (2) if the constructive amendment were proper and if the basis for relief was that the petitioner's rejection of the State's plea offer was unknowing, whether that basis is a cognizable ground for post-conviction relief where there is no constitutional right to a knowing and voluntary rejection of a plea offer; and (3) if the constructive amendment were proper and if the basis for relief was ineffective assistance of counsel, whether the post-conviction court erred in granting relief where the court did not conduct the Strickland two-pronged analysis. Upon our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and J. ROSS DYER, JJ., joined.

Herbert H. Slatery III, Attorney General and Reporter; Andrew C. Coulam, Assistant Attorney General; Matthew F. Stowe, District Attorney General; and Vance W. Dennis, Assistant District Attorney General, for the appellant, State of Tennessee.

Lance R. Chism, Memphis, Tennessee, for the Petitioner-Appellee, Marlon Yarbro.

**OPINION**

The following proof, as relevant to the issues raised in this appeal, was adduced at the August 15, 2016 post-conviction hearing.[1] The Petitioner testified that he was currently serving a 25-year sentence. He agreed that he had filed a petition for post-conviction relief alleging six issues; however, post-conviction counsel asked him to focus on issue six, whether trial counsel was ineffective. Although issue six did not explicitly provide that trial counsel was ineffective in advising the Petitioner of his potential sentence, this was post-conviction counsel's line of questioning for the bulk of the hearing. The State did not object to the line of questioning nor the Petitioner's responses. The Petitioner confirmed that he had discussed settling the case with trial counsel prior to trial. The Petitioner said that trial counsel told him that if he lost at trial, then the Petitioner would serve "25 years at 30 to 45 percent confinement. He never said nothing about no 100 percent." The post-conviction court asked for clarity, and the Petitioner replied:

> [Trial counsel] told me it would [be] 25 years, 30 to 45 percent confinement if I lost in trial. But he was so - - - I told him from the beginning when I first hired him, I said, look, this is my life, don't gamble with my life or none of that. He just, [said] Come on, . . . I'll beat him at trial . . . He just basically coerced me to go to trial.

The Petitioner further said that trial counsel told him his chance of winning was "like 60/40 the State way. Then after about maybe a month or two, he talking [sic] about it's like a 90 to 98 percent chance he could win, he could beat them in trial." Later in his

---

[1] The six issues raised in the Petitioner's handwritten, pro se petition for post-conviction relief were: (1) "the trial court error in applying the Drug free school zone enhancement to count one"; (2) "the trial court error in dismissing indictment at count one after jeopardy attached"; (3) "the trial court error in changing and/or altering the Grand jury indictment without the Grand jury consent"; (4) "the State error in count-one of the indictment for failing to charge the fact that constitute the offense of T.C.A 39-17-417(a)(3)(c)(1), contrary to T.C.A. 40-13-202"; (5) "the criminal judgment dated 3/3/15 count-one is void because T.C.A. 39-17-417(c)(1) is an 'B' felony not 'A' felony"; and (6) "trial counsel was ineffective for failing to raise the above claims, including sufficiency of evidence." The post-conviction court denied relief as to these issues, and they are not before us in this appeal.

testimony, the Petitioner restated what trial counsel told him when he asked trial counsel what would happen if he lost after trial:

> Well, you'll be looking at 25 years at 30 to 45 percent, somewhere in that gap. I said, Okay, that's what's up.
>
> Then he said, Man, something about you really don't want to know and all that. He said, it will be 25 to serve and all that. The letter is over there. I can't remember quite what he said.

The Petitioner testified that had he known his sentence exposure was 25 years at 100%, he never would have gone to trial. The Petitioner referred to a three-page letter from trial counsel, admitted as an exhibit, which he believed confirmed trial counsel's erroneous advice to him regarding sentencing. Although the letter was not dated, the Petitioner said he received it approximately fifteen days after his trial. Trial counsel sent the letter to the Petitioner in response to a letter the Petitioner had previously sent to him. The letter provided, in pertinent, as follows:

> One part of your letter that confused me was your reference to not being explained that your sentence would be 25 years. If you will recall, the following exchange took place at the jail before your trial:
>
> > [The Petitioner]: "What am I looking at if we lose the trial."
> > [Trial Counsel]: "Man, you really don't want to know."
> > [The Petitioner]: "Yes, I do."
> > [Trial Counsel]: "If you lose, it will be 25 years to serve."
>
> If you will recall, [initial trial counsel] explained this to you as well before you hired me. It was my understanding that you completely understood the seriousness of this crime, and severity was the primary reason that you sought my legal services.
>
> I do recall incorrectly advising you very early in my representation of you that you would be eligible for a 30% to 45% confinement on the 25-year sentence. The rule of law is typically that a non-violent felony, such as what you were convicted of, does not require a day-for-day sentence. Obviously, the legislature has

carved out a new law as it relates to school zones that I had not thoroughly read during this early consult. I apologize for not knowing this early on, but you had time to make an appropriate decision should you have wished to enter into a plea agreement.

If you will recall, the state never offered us a plea agreement anywhere near where you told me that you would plead to. You wanted to do a 6-year sentence at 30% and concurrent to your other violation. Eventually, you told me to seek an 8-year sentence at 30% again concurrent. The state always wanted a 12 to 15 year sentence, consecutive, and they always demanded more than 30% to serve. We never had a plea offer that you would take. As the client, that is completely your decision, but I agreed with you that the case was worth taking to trial based on the state's plea offers and the lack of proof on the video.

. . . .

I am sorry, sir, from the bottom of my heart for the way that your case unfolded. I do wish we had spent more time going over the consequences of a guilty conviction, but, since the state never got close with an offer where you needed to be, I think, today, that you made the right decision in fighting it. If you are granted a new trial, which you should be, I firmly believe that the state will offer you what you told me that you were willing to accept.

The Petitioner explained that the quoted section in the letter was untrue because he did not know that he was facing a sentence of 25 years confinement at 100% until after trial. Based on trial counsel's advice, the Petitioner believed he was facing a sentence of 25 years to be served at 30 to 45% or 7.5 to 8.75 years confinement before he would be eligible for release. He testified that the District Attorney, through his attorney, offered him a plea of "15 years at 45%" or 6.75 years of confinement before his release eligibility. He did not provide details on the structure of the plea agreement. Compared to the advice trial counsel had given him regarding his potential sentence, the Petitioner believed he had nothing to lose by rejecting the plea offer and going to trial.

When the prosecutor pressed the Petitioner about trial counsel's explanation that the Petitioner had time to make an appropriate decision after trial counsel corrected his erroneous sentencing advice, the Petitioner replied, "Yeah, but how am I supposed to do that, and he [sic] constantly coercing me to go to trial. Telling me, I can beat him . . .

- 4 -

come on, man."  Trial counsel charged the Petitioner a flat rate for his case, which included representation at trial.

Trial counsel testified consistently with the testimony of the Petitioner.  He was retained to represent the Petitioner on the instant offenses "very early, right after the drug round-up."  Trial counsel candidly acknowledged that "[i]n the very beginning, [he] was not aware [of the drug free school zone sentencing penalties]."  Trial counsel explained that the drug free school zone enhancement was a "relatively new law, and [he] didn't realize that it required 100% [service]."  Trial counsel initially believed that because the drug offenses were non-violent crimes, the Petitioner would be required to serve his sentence at either "30, 35% or 45%," which is what he advised the Petitioner.  Trial counsel insisted that prior to trial and before the guilty plea deadline had expired, he explicitly told the Petitioner that he had "25 years to serve."  Trial counsel conceded however that he did not engage in detailed discussions with the Petitioner regarding his potential sentence exposure.  In trial counsel's view, this did not impact the Petitioner's decision to proceed to trial because the State never made an offer of settlement that the Petitioner was willing to accept.  Trial counsel explained the extent of his conversations with the Petitioner regarding his sentencing range as follows:

Virtually every conversation I had with [the Petitioner] dealt with the State's offer in whether he was going to take their offer or not take their offer.  [The Petitioner], you know it was a little bit different than a lot of clients I have, because he was concentrating on what kind of offer I could get him.  That was his main concern.  That was everything that he cared about.  That was what we talked about every time . . . well, what kind of offer do you got?  Can you get them down to this?  Well, this person has this.  That was our main discussion.

So we discussed – every time I came down there, I told him if there was a new offer, what it was.  We're going to do this.  Or I'd go to the DA and present his new offer, and then go back to him and report to him what they said.  We so discussed it on the front end when I mistakenly told him that he would have to get a percentage on a conviction.  I did tell him that.  I was wrong.  I had not looked at the law yet.  I believe it was a new law just came out or very soon.  So he initially had [other counsel].  He came to me, because [other counsel], it's my understanding that [other counsel] told him exactly what he was looking at if he loses, and that is the reason he came to me to begin with.  So if that's the truth, then I wouldn't say that he didn't care, but he wasn't – he wanted to know what kind of offer we could get him.  So I went to work tearing the case apart to show the State to get him a better offer, regardless of what he potentially could get.

So we discussed his potential range the first time I met with him, and the last time I met with him before we went to trial, and I told him that. And that was the gist of how many times we talked about what he's looking at if he's found guilty.

The record shows that the Petitioner was arrested for the instant offense on June 23, 2014, indicted on July 21, 2014, and convicted on January 5, 2015. In total, trial counsel represented the Petitioner for approximately six months. Trial counsel denied pressuring the Petitioner to proceed to trial. Trial counsel agreed that "he had a good chance of winning" based on the video not showing the drug transaction and the informant's lack of credibility. Finally, trial counsel said that the "standing" settlement offer extended by the State was "15 years at 45%," which was based on the Petitioner's prior convictions. There was no testimony regarding how the State would have treated the mandatory minimum nature of the drug free school zone enhancement or the fact that it was a non-paroleable offense.

In granting the Petitioner relief, the trial court's order provided as follows:

In the [Petitioner's] sixth claim, he claims that trial counsel was ineffective generally but particularly claims that trial [counsel] was ineffective in explaining sentence ramifications and giving unreasonable opinions concerning possible trial outcomes.

The only possible deficiency in trial counsel's performance that gives the trial court concern is relative to discussions surrounding possible negotiated plea agreements as opposed to potential sentences upon conviction. This is particularly problematic when viewed with trial counsel's assessment of potential success at trial.

It is unquestioned that the [Petitioner] was offered a negotiated plea agreement of fifteen years with a release classification status of 45%. This was consistent with the range notice that had been provided the [Petitioner] to enhance punishment. There were significant discussions between trial counsel and [the Petitioner] concerning his sentence with a bad trial outcome. Trial counsel acknowledged that he original[ly] told the [Petitioner] that the twenty-five year minimum sentence would be classified at 30%, 35%, or 45%. He testified that he told the [Petitioner] while the plea offer was still outstanding, that the twenty-five year sentence was to serve. Trial counsel did not testify, that he told the [Petitioner] he would have to serve 100% of this sentence. He simply testified that he told him it was twenty-five years to serve.

- 6 -

. . . .

The court cannot speculate that the [Petitioner] understood that "25 years to serve" means a minimum of 25 years at 100%, particularly in view that number and percentages had been discussed. This is of particular concern to the court when according to the [P]etitioner's testimony trial counsel had suggested percentage of favorable outcome would be 90 to 98%. While trial counsel did not confirm these handicapping numbers he did readily acknowledge that he thought they had a very good case for trial and had clearly communicated this in no uncertain terms to the Petitioner.

While there is no constitutional right to a negotiated plea offer, if one is extended then a defendant has the right to make an intelligent and informed decision as to whether to accept the plea offer or to reject the plea offer and go to trial. This court [cannot] find in good conscience that the Petitioner made an intelligent and informed decision in rejecting the negotiated plea offer. The Petitioner testified that had he known that he could have potential[ly] received a minimum 25 year at 100% sentence that he would have accepted the negotiated plea offer. However, he rejected this plea offer based upon the assurances of trial counsel of a very high degree of favorable outcome at trial. Essentially the [Petitioner] was deprived of due process by being unable to make an intelligent and informed decision relative to the negotiated plea offer and possible outcome based upon the assurances of trial counsel.

It is from this order that the State now appeals.

## ANALYSIS

In its first issue, the State argues that the post-conviction court should be reversed because it provided relief to the Petitioner without statutory authority. The State contends that the Act requires a post-conviction petition to contain every claim for relief, including factual grounds for each claim, and the post-conviction court must grant relief on the petition or dismiss it. Because the Petitioner did not include the issue upon which the post-conviction court granted relief in his petition for post-conviction relief, the State claims the post-conviction court acted without authority, and therefore, the petition should be dismissed. In response, the Petitioner argues that the State has waived review of this issue for failure to object to the proof presented during the post-conviction

- 7 -

hearing.[2] Even if this court determines that there was no waiver, the Petitioner contends that this court should reach the merits of this issue because it was fully litigated during the post-conviction hearing and the post-conviction court ruled on the issue. For the reasons that follow, we agree with the Petitioner.

The following portions of the Post-Conviction Procedure Act (the Act), govern our analysis. A petitioner filing for post-conviction relief must comply with the following:

> (d) The petitioner shall include all claims known to the petitioner for granting post-conviction relief and shall verify under oath that all the claims are included.
>
> (e) The petitioner shall include allegations of fact supporting each claim for relief set forth in the petition and allegations of fact explaining why each ground for relief was not previously presented in any earlier proceeding. The petition and any amended petition shall be verified under oath. Affidavits, records or other evidence available to the petitioner supporting the allegations of the petition may be attached to it.

Tenn. Code Ann. § 40-30-104(d), (e). Upon preliminary consideration of a petition for post-conviction relief, the post-conviction court must comply with the following:

> (a) The trial judge to whom the case is assigned shall, within thirty (30) days of the filing of the original petition, or a petition amended in accordance with subsection (d), examine it together with all the files, records, transcripts, and correspondence relating to the judgment under attack, and enter an order in accordance with this section or § 40-30-107.
>
> . . . .
>
> (d) The petition must contain a clear and specific statement of all grounds upon which relief is sought, including full disclosure of the factual basis of those grounds. A bare allegation that a constitutional right has been violated and

---

[2] Original post-conviction counsel was permitted to withdraw from representation by order of this court on October 25, 2017, after he submitted his responsive brief to this court. New post-conviction counsel was subsequently appointed and filed a supplemental brief. Our opinion utilizes the arguments presented in the supplemental brief by new post-conviction counsel.

mere conclusions of law shall not be sufficient to warrant any further proceedings. Failure to state a factual basis for the grounds alleged shall result in immediate dismissal of the petition. If, however, the petition was filed pro se, the judge may enter an order stating that the petitioner must file an amended petition that complies with this section within fifteen (15) days or the petition will be dismissed.

(e) If a petition amended in accordance with subsection (d) is incomplete, the court shall determine whether the petitioner is indigent and in need of counsel. The court may appoint counsel and enter a preliminary order if necessary to secure the filing of a complete petition. Counsel may file an amended petition within thirty (30) days of appointment.

(f) Upon receipt of a petition in proper form, or upon receipt of an amended petition, the court shall examine the allegations of fact in the petition. If the facts alleged, taken as true, fail to show that the petitioner is entitled to relief or fail to show that the claims for relief have not been waived or previously determined, the petition shall be dismissed. The order of dismissal shall set forth the court's conclusions of law.

Tenn. Code Ann. § 40-30-106(a), (d)-(f).

Rule 28 of the Rules of the Tennessee Supreme Court operates to supplement the remedies and procedures set forth in the Act. After a petition for post-conviction relief is filed with the court, the evidentiary hearing is limited to the issues raised in the petition. Tenn. Sup. Ct. R. 28, § 8(D)(4). Our supreme court has further provided the following in its post-conviction procedural rules:

*If evidence is objected to on the basis that it concerns issues not raised in the petition or answer*, the court may allow amendments and shall do so freely when the presentation of the merits of the cause will otherwise be subserved. The court shall liberally allow a continuance in the event an amendment is allowed to enable the objecting party to meet the evidence.

Tenn. S. Ct. R. 28, § 8(D)(5) (emphasis added); see e.g., Adams v. State, No. W2001-02488-CCA-R3-PC, 2003 WL 103205, at *3 (Tenn. Crim. App. Jan. 9, 2003). The post-conviction court *__may__* dismiss a petition for post-conviction relief without a hearing if it

fails to contain specific factual allegations or otherwise fails to comply with these procedural rules. Tenn. S. Ct. R. 28, § 8(F)(3) (emphasis added).

At the top of our analysis, we must disagree with the State's assertion that the post-conviction court granted relief without any authority to do so. The Petitioner concedes that he did not explicitly include in his petition for post-conviction relief a claim of ineffective assistance of counsel based on trial counsel's failure to properly advise him of his sentence or a free standing due process claim based on his rejection of a more favorable settlement offer from the State. However, as noted in the order of the post-conviction court, the Petitioner did in fact generally claim that trial counsel was ineffective in issue six of his petition. At the hearing, post-conviction counsel narrowed issue six, the ineffectiveness of counsel inquiry, to trial counsel's failure to properly advise the Petitioner of his sentencing range.[3] Based on our review of the record, this was the primary issue presented. The State did not interpose a single objection throughout the hearing and questioned the Petitioner and trial counsel regarding trial counsel's failure to properly advise the Petitioner regarding sentencing. Rather than an issue of statutory construction, as the State now argues for the first time on appeal, we must determine whether the State properly preserved this issue because it failed to object during the post-conviction hearing.

In Walsh v. State, 166 S.W.3d 641, 645-46 (Tenn. 2005), an appeal of the denial of post-conviction relief, the State argued that the petitioner had waived the issue of improper influence on the jury due to his failure to raise it on direct appeal. In rejecting this argument, the Tennessee Supreme Court reasoned as follows:

> [T]he State did not assert the defense of waiver at the post-conviction hearing; instead, the State raises it for the first time in this Court. By doing so, the State has denied the petitioner an opportunity to rebut the presumption that this issue has been waived. See Tenn. Code Ann. § 40-30-110(f) (2003) (providing that "[t]here is a *rebuttable presumption* that a ground for relief not raised before a court of competent jurisdiction in which the ground could have been presented is waived") (emphasis in original). Under these circumstances, we conclude that the State's waiver argument has itself been waived. Issues not addressed in the post-conviction court will generally not be addressed on appeal. See Rickman v. State, 972 S.W.2d 687, 691 (Tenn. Crim. App. 1997); see also State v. White, 635 S.W.2d 396, 397-98 (Tenn. 1982) (rejecting an argument

---

[3] It is obviously the better practice to explicitly amend petitions for post-conviction relief, which is the purpose of appointing counsel to a post-conviction petitioner. The record is silent as to why original post-conviction counsel failed to do so.

presented by the State for the first time on appeal). We conclude therefore that the State may not properly assert the issue of waiver for the first time in this Court.

Walsh, 166 S.W.3d at 645-46.

The State insists that any reliance on Walsh is misplaced because, in its view, the issue "is not whether the petitioner waived a claim for relief (and therefore whether the State could have waived its alleged waiver argument) but whether the post-conviction court had the statutory authorization to adjudicate a claim never asserted in a petition but constructed by the [post-conviction] court[.]" In support of its position, the State points to the inclusion of waiver provisions in Tennessee Code Annotated sections 40-30-106(g), -110(f), and omission of the term "waiver" in Tennessee Code Annotated sections 40-30-104(d)-(e), or 106(d). We agree with the State to the extent that the waiver in the case before us, unlike Walsh, does not involve whether the Petitioner waived a claim by failing to raise it in a lower court, such that it required the State to put the Petitioner on notice of its affirmative defense and triggered the rebuttable presumption provision of section 40-30-110(f). We rest our decision instead on the portion of Walsh which relies on the fundamental legal tenet that "'a party may not take one position regarding an issue in the trial court, change his strategy or position in mid-stream, and advocate a different ground or reason in this Court.'" See State v. Adkisson, 899 S.W.2d 626, 635-36 (Tenn. Crim. App. 1994) (quoting State v. Dobbins, 754 S.W.2d 637, 641 (Tenn. Crim. App. 1988)).

The State's failure to object during the hearing, and choosing to assert this issue for the first time on appeal, prevented the Petitioner from amending his petition, which the Act contemplates and liberally allows. The State's failure to object also deprived the post-conviction court an opportunity to review the issue. We acknowledge the State's concern with the inability to object to matters not included in the petition; however, this record clearly shows a prolonged period of question and answer on the issue by post-conviction counsel and the State. It does not show a situation involving surprise or the need for the State to have additional time to respond or prepare. Finally, even if we reversed the judgment of the post-conviction court for failure to strictly comply with the Act as the State insists, our remedy, at most, would be to remand the matter for another hearing. Accordingly, because the State failed to object in the post-conviction court, it has waived its claim of procedural default in this court.

As for the remaining issues, the State essentially contends that the post-conviction court's order was too ambiguous to determine its basis for relief. The State argues that the order could be based on a due process right to knowingly and voluntarily reject a plea offer, which is not a cognizable claim for relief, or the ineffective assistance of trial

- 11 -

counsel, a claim which cannot be supported because the order lacks analysis under <u>Strickland</u>. Under either interpretation, the State maintains the post-conviction court erred in granting the Petitioner relief. In response, the Petitioner contends, and we agree, that "a fair reading" of the post-conviction court's order demonstrates that it granted relief based on the ineffective assistance of trial counsel to properly advise the Petitioner of his sentence.[4]

We begin by recognizing the State's concern that the order of the post-conviction court lacks explicit findings of fact regarding the ineffectiveness of trial counsel in failing to properly advise the Petitioner of his sentencing range, <u>see</u> Tenn. Code Ann. § 40-30-111(b) (requiring the court to enter an order containing its findings of fact and conclusions of law for each ground raised by the petitioner) and Tenn. R. S. Ct. 28, § 9(A) (stating that the order must contain specific findings of fact and conclusions of law for each issue raised by the petitioner). However, a review of the post-conviction hearing shows that the proof was substantially dedicated to this issue. Indeed, there was no dispute as to this issue, as both the Petitioner and trial counsel testified consistently regarding his erroneous sentencing advice. Moreover, the order granting post-conviction relief specifically refers to the ineffective assistance of trial counsel and notes:

> In the [Petitioner's] sixth claim, he claims that trial counsel was ineffective generally but particularly claims that trial [counsel] was ineffective in explaining sentence ramifications and giving unreasonable opinions concerning possible trial outcomes.

> The only possible deficiency in trial counsel's performance that gives the trial court concern is relative to discussions surrounding possible negotiated plea agreements as opposed to potential sentences upon conviction. This is particularly problematic when viewed with trial counsel's assessment of potential success at trial.

Taken in context, we do not view the later language in the order as granting relief based upon "an alleged Fifth Amendment due-process right to a knowing and voluntary rejection of the State's plea offer[,]" as argued by the State. Accordingly, we conclude that the transcript of the post-conviction hearing and the order of the post-conviction court provide a sufficient record for our review of whether trial counsel was ineffective in failing to properly advise the Petitioner of his sentence. <u>See</u> <u>State v. Swanson</u>, 680 S.W.2d 487, 489 (Tenn. Crim. App. 1984) (holding that although written findings of fact

---

[4] The Petitioner alternatively advocates for a due process right to knowingly and voluntarily reject a plea offer, should this court so interpret the basis of the order of the post-conviction order. Because we conclude that the post-conviction court properly granted relief based on the ineffective assistance of counsel, we need not address this issue.

and conclusions of law on each issue facilitate appellate review, reversal is not required when there is an adequate record for review).

We now delve into the substance of the issue presented. Post-conviction relief is only warranted when a petitioner establishes that his or her conviction or sentence is void or voidable because of an abridgement of a constitutional right. Tenn. Code Ann. § 40-30-103. The Tennessee Supreme Court has held:

> A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve. The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (internal citations and quotation marks omitted); see Felts v. State, 354 S.W.3d 266, 276 (Tenn. 2011); Frazier v. State, 303 S.W.3d 674, 679 (Tenn. 2010). A post-conviction petitioner has the burden of proving the factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); Tenn. Sup. Ct. R. 28, § 8(D)(1); Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Lane v. State, 316 S.W.3d 555, 562 (Tenn. 2010); Grindstaff v. State, 297 S.W.3d 208, 216 (Tenn. 2009); Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Vaughn, 202 S.W.3d at 116 (citing Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975); Strickland v. Washington, 466 U.S. 668, 687 (1984)). A petitioner successfully demonstrates deficient performance when the petitioner establishes that his attorney's conduct fell "below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688; Baxter, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. at 370 (quoting Strickland, 466 U.S. at 694). Moreover,

[b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Id. at 370 (citing Strickland, 466 U.S. at 697).

In Hill v. Lockhart, 474 U.S. 52, 58-59 (1985), the United States Supreme Court extended Strickland's two-prong test to challenges of guilty pleas based on ineffective assistance of counsel. Hill was based on the petitioner's acceptance of a plea offer as a result of trial counsel's erroneous advice. While the first deficiency prong of Strickland remained the same, a petitioner establishes the second prejudice prong by showing "a reasonable probability that, but for counsel's errors, [the petitioner] would not have pleaded guilty and would have insisted on going to trial." Id. at 59. Years later, and in contrast to Hill, the Supreme Court extended the right to effective assistance of counsel to defendants who reject plea bargains because of their lawyers' deficient performance. Lafler v. Cooper, 566 U.S. 156, 160-75 (2012); Missouri v. Frye, _ U.S. _, 132 S. Ct. 1399, 1407-09 (2012) (in the context of guilty pleas a defendant must show the outcome of the plea process would have been different with competent advice); accord Bush v. State, 428 S.W.3d 1, 20 (Tenn. 2014) (citing Frye, 132 S. Ct. at 1407); Wlodarz v. State, 361 S.W.3d 490, 503-04 (Tenn. 2012); see also McMann v. Richardson, 397 U.S. 759, 771 (1970) ("defendant [who] ... enters his plea upon the advice of counsel [entitled to] advice ... 'within the range of competence demanded of attorneys in criminal cases'").

In Lafler v. Cooper, the defendant shot at the victim's head and ultimately struck her "buttock, hip, and abdomen," but she survived. Lafler, 566 U.S. at 161. After being charged with various offenses, the defendant three times rejected plea offers, "allegedly after his attorney convinced him that the prosecution would be unable to establish his intent to murder the victim because she had been shot below the waist." Id. The defendant proceeded to trial, was convicted as charged, and received a sentence three and a half times more severe than the initial offer conveyed by the prosecution. On appeal, there was no dispute as to the deficiency prong of Strickland. The Court then elaborated on the prejudice prong of Strickland in the context of a rejected plea offer and held:

a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the

- 14 -

conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

Id. at 164.

In regard to the remedy for successful ineffective-assistance-of-counsel claims, the Court cautioned that

Sixth Amendment remedies should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests. Thus, a remedy must "neutralize the taint" of a constitutional violation, while at the same time not grant a windfall to the defendant or needlessly squander the considerable resources the State properly invested in the criminal prosecution.

Id. at 170 (internal citations and quotation marks omitted). Nevertheless, if the defendant establishes a successful ineffective-assistance-of-counsel claim, then it is within the trial court's discretion to fashion the appropriate remedy. The Court envisioned the following two remedial scenarios: when the charges that would have been admitted as part of the plea bargain are the same as the charges the defendant was convicted of after trial, "the court may exercise its discretion in determining whether the defendant should receive the term of imprisonment the government offered in the plea, the sentence he received at trial, or something in between." Id. at 171. Or, if re-sentencing alone will not be full redress for the constitutional injury, i.e. an offer was for a guilty plea to a count or counts less serious than the ones for which a defendant was convicted after trial, or if a mandatory sentence confines a judge's sentencing discretion after trial, then "the proper exercise of discretion to remedy the constitutional injury may be to require the prosecution to reoffer the plea proposal[.]" Id. (internal citations omitted). Upon the offer's acceptance, the court has the discretion to vacate the conviction from trial, accept the plea, or leave the conviction undisturbed. Id.

In applying the above law to this case, the record does not preponderate against the order of the post-conviction court. As to the deficiency prong, "[a] criminal defendant has a right to expect at least that his attorney will review the charges with him by explaining the elements necessary for the government to secure a conviction, discuss the evidence as it bears on those elements, and *explain the sentencing exposure the defendant will face as a consequence of exercising each of the options available.*" Joseph Lamont Johnson, Jr. v. State, No. M2012-02310-CCA-R3-PC, 2014 WL 793636, at * 8 (Tenn. Crim. App. Feb. 27, 2014) perm. app. denied (Tenn. July 14, 2014) (finding deficient performance based on counsel's failure to properly advise of potential sentence) (quoting Smith v. United States, 348 F.3d 545, 553 (6th Cir. 2003)). Moreover,

"[k]nowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty." United States v. Day, 969 F.2d 39, 43 (3d Cir. 1992) (citing Williams v. State, 326 Md. 367, 605 A.2d 103 (1992) (counsel's conduct was constitutionally deficient in failing to advise petitioner of mandatory 25-year sentence upon conviction at trial when offer to plead guilty to lesser offense involved exposure only to 10-year sentence) and Commonwealth v. Napper, 254 Pa. Super. 54, 385 A.2d 521 (1978) (counsel ineffective in giving no advice about desirability of plea offer with three-year maximum sentence when trial risked ten to forty years and defendant's chances of acquittal were slim)).

Here, the record shows that the Petitioner, a Range II offender, was charged with violating the drug free school zone law, which required a mandatory minimum 25-year sentence with no parole. The Petitioner hired trial counsel instead of another attorney based on trial counsel's advice that his potential sentence exposure was 25 years to be served at "30, 45%." The Petitioner's focus throughout the six months leading up to trial was on receiving a favorable settlement offer from the State. During this six-month period, trial counsel discussed the Petitioner's potential sentence only twice: at the beginning in error and at the end prior to trial. In the interim, the Petitioner received and rejected settlement offers from the State believing that, at worst, his potential sentence would be "25 years at 30, 45%." Despite trial counsel's attempt to correct his erroneous sentencing advice at the end of his representation by replacing the percentage of service with the words "to serve," trial counsel never clarified that a conviction under the drug free school zone law was not eligible for parole, meaning that the Petitioner would be required to serve 25 years' confinement at 100%. Under these facts and circumstances, the Petitioner has established that trial counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. Accordingly, we agree with the post-conviction court, and conclude that trial counsel's performance was deficient.

As to the prejudice prong, the Petitioner was required to demonstrate that, but for counsel's deficient representation, there is a reasonable probability that (1) the Petitioner would have accepted the plea, (2) the prosecution would not have withdrawn the offer, and (3) the trial court would have accepted the terms of the offer, such that the penalty under its terms would have been less severe than the penalty actually imposed. While the details of the offer are unclear, the undisputed proof shows that the "standing" offer from the State to settle the matter was "15 at 45%." The Petitioner testified that had he known the correct sentencing exposure upon conviction at trial was 25 years' confinement with no parole, he would have accepted the State's negotiated plea agreement. There is nothing in the record indicating that the State would have withdrawn the offer or was in any way prohibited by law from extending it. It is likewise reasonable to predict that the trial court would have approved the terms of the offer and accepted the Petitioner's plea.

See Ebron v. Comm'r of Corr., 53 A.3d 983, 989 (Conn. 2012) (holding that in most jurisdictions, prosecutors and judges are familiar with the boundaries of acceptable plea bargains and sentences and therefore, in most instances, it is not difficult to make an objective assessment as to whether or not the prosecution would withdraw an offer or the court would accept). And finally, as to the last element of the Lafler prejudice prong, the Petitioner has demonstrated that the 25-year-sentence with no parole imposed after trial was more severe than the 15-year-offer to be served at 45% that was conveyed by the State.

## CONCLUSION

The Petitioner has established that, but for the ineffective advice of trial counsel, it is reasonably probable that he would have accepted the plea offer, such offer would have been submitted by the State and accepted by the court, and that his sentence would have been less severe than the sentence that was in fact imposed. In other words, the Petitioner has demonstrated that without trial counsel's erroneous sentencing advice, the result of his guilty plea negotiation phase would have been different. We therefore affirm the judgment of the post-conviction court and remand this matter to determine the appropriate remedy pursuant to Lafler.

_____
CAMILLE R. McMULLEN, JUDGE